DU PONT DE NEMOURS CEMETERY COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Du Pont De Nemours Cemetery Co. v. Commissioner
Docket No. 7081-73.
United States Tax Court
T.C. Memo 1974-314; 1974 Tax Ct. Memo LEXIS 7; 33 T.C.M. (CCH) 1438; T.C.M. (RIA) 740314; December 18, 1974, Filed. Johannes R. Krahmer, *8 for the petitioner. Brian J. Seery and Edward I. Foster, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in income tax in the amount of $3,100.90 for the taxable year ended November 30, 1965. The primary issue to be decided is whether petitioner is an organization described by section 501(c) (13) [1] and therefore exempt from income tax under section 501(a); if we hold that petitioner is not an organization described by section 501(c) (13) then we must decide whether it is entitled to a deduction for additions to a reserve for the perpetual care of its cemetery even though it did not segregate these monies from its general fund. FINDINGS OF FACT All of the facts have been stipulated and are so found. [2]
Petitioner is a corporation organized by special *9 act of the General Assembly of the State of Delaware having its principal office in Wilmington, Delaware, at the time the petition was filed. Petitioner's taxable year ends November 30, and for taxable year ended November 30, 1965, petitioner filed its return on Form 990-A as an organization exempt from income tax with the district director of internal revenue, Philadelphia, Pennsylvania.
On April 6, 1893, both Houses of the Delaware General Assembly passed a special Act incorporating petitioner as the "du Pont de Nemours Cemetery Company." The Act determined petitioner's existence to be 20 years, "for the purpose of maintaining a private cemetery or burial ground in Christiana Hundred, New Castle County and State of Delaware." The Act provided that petitioner's affairs were to be conducted by a board of five directors elected by the company's members from among themselves. On April 6, 1913, the original charter of petitioner expired by limitation through inadvertence and oversight. However, on December 18, 1917, petitioner filed a "Certificate of Renewal and Revisal of Charter of du Pont de Nemours Cemetery Company" under which its charter was revised and its corporate existence *10 made perpetual. The only change made by the "Certificate of Renewal and Revisal of Charter" was to designate the location of the principal office of the company. This certificate was approved by a special Act of the Delaware General Assembly dated April 10, 1917.Petitioner has at all times since been a corporation validly incorporated and in good standing under the laws of the State of Delaware. Prior to petitioner's incorporation, a burial plot for members of the duPont family and personal employees was located on land then owned by the E.I. duPont de Nemours Company. There were approximately 63 burials on that land prior to petitioner's incorporation, the earliest being that of Pierre Samuel duPont de Nemours in 1817. The E.I. duPont de Nemours Company deeded this land to petitioner following petitioner's incorporation. After incorporation various gifts were made to petitioner as an endowment in order to defray its expenses. Initially there was no charge made for membership in petitioner or for burial lots. Petitioner's original bylaws were adopted at a meeting of its members held on December 23, 1893. At that meeting the initial board of directors, consisting of five *11 members, was elected, and the officers were elected at the same time. Articles VII through XII of the original bylaws relating to membership and burial provided as follows: Article VII. The Board of Directors shall have discretionary power to admit to membership in the Company such persons as may be approved of by said Board, upon their written application. Such application may be made in substantially the following form, viz: - "I do hereby apply for admission to membership to the DuPont de Nemours Cemetery Company, and agree to conform in all respects to the by-laws and regulations of said Company.
(signed) * * *" Article VIII Membership in the Company and all rights appertaining thereto may be forfeited and terminated by the unanimous vote of the Board of Directors for reasons satisfactory to said Board. Article IX Membership in the Company shall include the right on the part of the member and his or her wife or husband and his or her minor child or children to be interred in the cemetery or burial grounds owned or which shall be owned by the Company, upon payment of all burial charges due the Comapny. Article X The Board of Directors shall have full power *12 from time [sic] to prescribe and determine the terms, charges and conditions upon which burials shall be permitted to be made in the cemetery or burial grounds owned or to be owned by the Company. Article XI The Board of Directors shall at any time have power by unanimous vote to permit other than members of the Company to be interred in the Cemetery or burial grounds, owned or to be owned by the Company. Article XII The Board of Directors shall have power from time to time to assess and collect from the members of The Company by a uniform assessment such sums as with money received from other sources shall be necessary to defray the expenses of the Comapny. The meeting of the board of directors held on June 28, 1923, showed that petitioner's funds totaled approximately $7,500, yielding an annual income of approximately $411, which the board viewed as insufficient to meet petitioner's obligation to care properly for the cemetery. The board at that meeting resolved that it was highly important to increase the fund so as to give petitioner an adequate income to meet its current expenses. Accordingly, the directors invited every member to contribute to the fund, with the *13 understanding that no contribution in excess of $1,000 would be accepted. The board also resolved that the secretary was to attempt to secure additional members. At the meeting of petitioner's board of directors held on August 21, 1923, the limitation of $1,000 on contributions was increased to $2,500. It was further resolved to send a letter to all members soliciting contributions to the fund. The board of directors met on June 23, 1924, and deemed it advisable to proceed with the apportionment of the cemetery lots among the members, with nonmembers not being considered in the assignment. A proper charge for interment was to be made against the estates of all non-members. Prior to 1927, burial lots were assigned without charge to members of petitioner who had contributed to the fund. There were 67 burials of members or their relatives between 1893 and 1927. As of 1927, the first formal sale of lots began at a price of $100 per lot. The purpose of that charge was to increase petitioner's fund so that its income would be sufficient to cover operating expenses. Those persons who purchased lots were all given the opportunity to become members and to have voting rights at *14 the meetings of members. No additional charge was made for membership. On July 2, 1926, the board of directors adopted a resolution to change Article XI of the bylaws, which change was to be recommended to the annual meeting of members so that this Article would read as follows: No burial shall be permitted to other than direct descendants of Pierre Samuel duPont de Nemours or to the wife or husband of such decedants. This change in the bylaws was adopted at the biennial meeting of members held on December 21, 1926.
At the meeting of members held December 16, 1947, Article IX was amended to read as follows: Membership in the Company shall include the right on the part of the member and his or her wife or husband and his or her child or children to be interred in the Cemetery or burial grounds owned or which shall be owned by the Company, upon payment of all burial charges due the Company; subject, however, to the terms of Article XI. At the same meeting, Article XI was expanded to read as follows: No burial shall be permitted to other than the direct descendants of Pierre Samuel duPont de Nemours and to the wife or husband, the stepchildren and the adopted children *15 of such descendants, provided, however, that if any former wife or husband of such descendant shall have had children by that descendant, such former wife or husband shall have burial rights if one or more of her or his children shall have expressed in writing that they so desire.
At the meeting of members held on May 28, 1957, Article XI was further expanded to require a majority of the board of directors to approve the written request of the children that the former wife or husband have burial rights in the cemetery. The original parcel of land acquired by petitioner contained a total of 577 lots, of which 36 were allocated to planting trees and shrubs and to other improvements, and hence were not available for burial purposes. The remaining 541 lots have all been sold, and to date, 226 persons have been buried in the original cemetery land. By the late 1950's, petitioner realized that more burial plots would be needed. At the April 8, 1959, meeting of petitioner's board of directors, petitioner agreed to purchase five acres of land adjoining the original cemetery land from Eleutherian Mills-Hagley Foundation, Inc., at a price determined by three appraisers.At the meeting *16 of members held on December 15, 1959, a purchase of the five acres at a price of $5,000 per acre was approved. At the members' meeting of December 1, 1964, a form of letter to be sent to persons eligible for membership who were over age 25 and residing in the continental United States was approved. On June 1, 1965, the new area was opened for the sale of lots at $200 each. The new area contains a total of 1,710 lots, of which 355 lots have been sold. Membership in the company is determined under Article VII, which read as follows throughout 1965: The Board of Directors shall have discretionary power to admit to membership in the Company those persons to whom lots in the Cemetery have been assigned and those persons whose burials are permitted under Article XI. Applications may be made in substantially the following form, viz: "I do hereby apply for admission to membership in the Du Pont de Nemours Cemetery Company, and agree to conform in all respects to the By-Laws and regulations of said Company. (signed) …." The business of the company is conducted and managed by a board of five directors who are elected by the members of the petitioner from among themselves. *17 Special meetings of the company may be called by the president upon written application of any three members of petitioner. A majority of the members of the company, by person or proxy, must be present to elect the board of directors, adopt, repeal or amend the bylaws, or to transact business at meetings of the members. The board is required to have a grounds' committee and to exercise oversight of plans for erecting monuments and gravemarkers. Each purchaser of a lot or lots received a certificate from petitioner identifying the lots purchased and containing a covenant on the part of petitioner to maintain those lots in perpetual care. This certificate has been consistently used since 1965. Petitioner's sole source of income since its incorporation has been from contributions to its general fund, proceeds from the sale of burial lots, and income from investments of its general fund, including capital gains. The petitioner did not maintain a separate trust fund nor make any segregation on its books for a separate trust fund for the maintenance of burial plots. All care and maintenance of burial plots was paid for out of the petitioner's general fund.
Petitioner has never *18 paid any dividends to members. Its only payments have been for the care and maintenance of its burial plots and other cemetery land, for the purchase of additional land, and for the reasonable administrative expenses incident to its operations. No member, director or officer has ever received any dividends or interest from the corporation or other payment, except that James Q. and Helen R. duPont have received modest compensation. With this single exception, all of the officers, directors and members serve without compensation. James Q. duPont was appointed assistant secretary in 1965 to handle the additional administrative duties related to the new burial ground. Thereafter, he and his wife handled the administrative work of petitioner, including correspondence, arrangements with undertakers, supervision of maintenance of the grounds, transfer and assignment of lots, etc. Helen R. duPont was paid until 1968 at the hourly rate of $2.25 and James Q. duPont was paid a salary. James Q. duPont resigned as assistant secretary at the end of 1969 and Helen R. duPont assumed his duties in addition to those previously performed by her at an annual salary of $6,000. The total amounts *19 paid to James Q. and Helen R. duPont are as follows: Year Ended
James Q. duPont
Helen R. duPont
November 30, 1965
$-
$ 536
November 30, 1966
1,000
1,050
November 30, 1967
1,500
44
November 30, 1968
4,000
1,000
November 30, 1969
4,000
2,000
November 30, 1970
-
6,000
November 30, 1971
-
6,000
November 30, 1972
-
6,000
November 30, 1973
(deceased)
6,000
In May 1970, petitioner filed a request on Form 1026 for recognition as an exempt organization described in section 501(c) (13) with the district director of internal revenue, Philadelphia, Pennsylvania. Under date of July 29, 1970, a determination letter was issued by that office denying petitioner's request. OPINION The issue we must decide is whether petitioner is an organization described by section 501(c) (13) [3] and thus exempt under section 501(a) (1) from Federal income tax; because we hold for the petitioner, we do not reach the issue of the deductibility of petitioner's additions to a reserve for perpetual care which was not segregated from its general fund. *20 Petitioner is a family cemetery company in whose cemetery burial is restricted, with minor exceptions, to the descendants of Pierre Samuel duPont. Respondent first asserts that because petitioner is a family cemetery company, it cannot serve public purposes and cannot, therefore, be described by section 501(c) (13). Respondent urges that we adopt, as a precondition to exemption under section 501(c) (13), a test that a cemetery company be "public." We have fully considered this argument and rejected it in the recent decision of The John D. Rockefeller Family Cemetery Corporation, 63 T.C. 31 (Dec. 17, 1974). We follow that case here. However, unlike his position in Rockefeller, respondent in this case argues that petitioner does not meet any of the three statutory tests of section 501(c) (13). [4]
*21 Petitioner need meet only one of these tests to qualify for exemption. Commissioner v. Kensico Cemetery, 96 F.2d 594 (C.A. 2, 1938), affirming 35 B.T.A. 498 (1937); West Laurel Hill Cemetery Co. v. Rothensies, 139 F.2d 50, 54 (C.A. 3, 1943), certiorari denied 321 U.S. 780 (1944); Rose Hills Memorial Park Association v. United States, 463 F.2d 425 (Ct. Cl. 1972); The John D. Rockefeller Family Cemetery Corporation, supra. Petitioner has carried its burden of proof and overcome the presumptive correctness of respondent's determination. Rule 142, Tax Court Rules of Practice and Procedure.
We think petitioner has demonstrated that it meets at least the test of being a cemetery company owned and operated exclusively for the benefit of its members. [5] Clearly, petitioner is a cemetery company. It owns and manages a cemetery for the burial of the dead which is beautified and cared for by petitioner. The land is plotted for gravesites as well as improvements normally associated with cemeteries, and the gravesites are sold for consideration. Mercantile Bank & Trust Company v. United States, 441 F.2d 364, 366 *22 (C.A. 8, 1971). However, respondent alleges that petitioner is not owned and operated exclusively for the benefit of its members. He states that "members" means only owners of burial lots, and he argues that petitioner's charter and bylaws allow individuals other than members a voice in the control of the corporation. (13)-1 Sec. 1.501(c) (13)-1(a) (1), Income Tax Regs. In West Laurel Hill Cemetery Co., supra, the Third Circuit expressed its approval of the predecessor of respondent's regulation, promulgated under the Revenue Act of 1932, which interpreted "members" to mean "lot owners." [6] The court stated, 139 F.2d at 54, the following: [West Laurel Hill Cemetery Company] was not owned and operated exclusively for the benefit of its members if members be taken to mean, as we think the Revenue Acts [of 1932 and 1934] intend, the owners of lots or burial rights in the cemetery. Here, the owners of lots or burial rights have neither had *23 nor have any voice in the management or operation of the company's affairs. A brief inspection of petitioner's history shows an active and exclusive involvement on the part of the owners of the burial rights in the cemetery in petitioner's management and affairs. Petitioner's charter and bylaws provide that all members of petitioner have voting rights, that only members of the company may be elected to its board of directors, and that directors are to be elected by the general membership. The record shows an active and orderly board of directors guiding petitioner's affairs. The board oversees the plans for erecting monuments and gravemarkers and maintains a grounds' committee. Purchase of additional land in 1959 was approved by vote of the members of the company. Any change in the bylaws must be approved by the membership, and such approval was voted by the members on three occasions. The only remaining question, then, is whether *24 the members of the company own lots or burial rights in the cemetery. Article IX of petitioner's bylaws provides that membership in the company "shall include the right on the part of the member * * * to be interred in the cemetery or burial grounds owned or which shall be owned by the company;" subject, however, to the terms of Article XI. Article XI restricts burial to descendants of Pierre Samuel duPont de Nemours, their spouses, children, stepchildren and adopted children. Membership in petitioner is available to those persons whose burial is permitted under Article XI and to those to whom burial lots have already been assigned. Therefore, it seems clear that only the owners of lots or burial rights in the cemetery participate in the management and affairs of petitioner. Petitioner's only business is to manage the cemetery and provide perpetual care for the gravesites. Its sole source of income has been contributions to its general fund, proceeds from the sale of burial lots and income from investments in the general fund. Its only expenditures have been for the care and maintenance of its cemetery land, for the purchase of additional cemetery land, and for the reasonable *25 administrative expenses incident to its operations. We think that the entire record can only support the conclusion that petitioner is owned and operated exclusively for the benefit of those with burial rights in the cemetery. Petitioner is an organization described by section 501(c) (13) and is exempt from Federal income tax under section 501(a). Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless other specified. ↩
2. This case was submitted for adjudication under Rule 122, Tax Court Rules of Practice and Procedure.↩ By order of the Chief Judge, dated September 25, 1974, this case was assigned to Judge Bruce M. Forrester for disposition. 3. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation. - An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle * * * * * * (c) List of Exempt Organizations. - The following organizations are referred to in subsection (a): * * * (13) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual. ↩
4. The three tests are as follows: (1) "Cemetery companies owned and operated exclusively for the benefit of their members," (2) "or which are not operated for profit;" (3) "and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, if such company or corporation is not operated for profit and no part of the net earnings of such company or corporation inures to the benefit of any private shareholder or individual." Sec. 501(c) (13). In 1970 Congress expanded the section to include crematory operations. P.L. 91-618, sec. 1. ↩
5. Since petitioner qualifies as an organization described by sec. 501(c) (13) by meeting this test, we will not belabor the issue by discussing whether it qualifies under the other two tests. ↩
6. Treas. Regs. 77, art. 526, which read in pertinent part as follows: Art. 526. Cemetery companies. - A cemetery company may be entitled to exemption - (1) If it is owned by and operated exclusively for the benefit of its lot owners * * * ↩